## 33526. STATE OF GEORGIA v. MEREDITH CHEVROLET, INC. et al.

PER CURIAM.

This court granted certiorari to review the decision of the Court of Appeals in *State of Ga. v. Meredith Chevrolet, Inc.,* 145 Ga. App. 8 (244 SE2d 15) (1978). We affirm the decision of the Court of Appeals, based upon the reasoning stated in the opinion of the Court of Appeals.

*Judgment affirmed. All the Justices concur, except Jordan, Hill and Marshall, JJ., who dissent.*

ARGUED JULY 10, 1978 — DECIDED SEPTEMBER 29, 1978.

*Arthur K. Bolton, Attorney General, Victor M. Baird, Assistant Attorney General,* for appellant.

*Smith & Shiver, Truett Smith, Troutman, Sanders, Lockerman & Ashmore, William G. Vance, Frederick E. Link,* for appellees.

HILL, Justice, dissenting.

This is a statutory interpretation case. The Court of Appeals held that Meredith Chevrolet's alleged rolling back the odometers on 78 cars it sold at auction to retail used car dealers did not violate the Fair Business Practices Act of 1975 (FBPA). 145 Ga. App. 8. Meredith Chevrolet argues that the Court of Appeals was correct in finding that the Act does not apply to wholesale

transactions.

The Act is applicable to "consumer transactions" and "consumer acts or practices." Code Ann. § 106-1203. The Court of Appeals recognized that the conduct here involved (selling cars to retailers after changing the reading on the odometers to show fewer miles of operation than they actually had been driven) was not a "consumer transaction" as defined by the Act. 145 Ga. App. at 12. That court also found that the conduct was, as a matter of law, not a "consumer act or practice" within the meaning of the Act, holding that to be subject to direct suit a manufacturer, wholesaler, or other middleman not dealing directly with a consumer-purchaser, must have done some volitional act to avail himself of the "channels of consumer commerce"; i.e., the allegedly offensive activity must have taken place within the "context of the consumer marketplace." 145 Ga. App. at 12. Although the court agreed that rolling back odometers and selling the altered vehicles to retailers reasonably tended to encourage consumer transactions, 145 Ga. App. at 12, it found that the medium chosen, private sale to retailers, was outside the "context of the consumer marketplace." 145 Ga. App. at 13. The Court of Appeals reached its conclusion after finding that the General Assembly omitted the word "any" in the phrase "any trade or commerce" as it appeared in the model Act on which the FBPA was based.[1] 145 Ga. App. at 11-12. The phrases "channels of consumer commerce" and "context of the consumer marketplace" relied upon by the Court of Appeals were created by that court and do not appear anywhere in the Act being construed. We granted certiorari to determine the scope of the FBPA and the majority affirm. I dissent.

The issue for decision is whether the Fair Business Practices Act applies to persons other than retailers who misrepresent their goods with the intention of

---

[1]The model act is the Unfair Trade Practices and Consumer Protection Law prepared by the Council of State Governments. "Consumer Protection in the States," pp. 31-39 (1970). See Ga. House Journal, 1973, p. 1585.

encouraging consumer transactions but do not sell directly to consumers and do not direct advertisements to consumers.

As has often been stated, the cardinal rule of statutory construction is to give effect to the intention of the General Assembly. *Ford Motor Co. v. Abercrombie,* 207 Ga. 464 (1) (62 SE2d 209) (1950); Code Ann. § 102-102 (9). The legislative intention of an unclear Act is ascertained by considering that Act as a whole, *Williams v. Bear's Den, Inc.,* 214 Ga. 240, 242 (104 SE2d 230) (1958), including its caption (title), *Foster v. Brown,* 199 Ga. 444, 450 (34 SE2d 530) (1945).

In reviewing the Fair Business Practices Act of 1975 (Ga. L. 1975, pp. 376-393, Code Ann. § 106-1201 et seq.), in order to answer the inquiry now before the court, the following parts of the Act are pertinent. The caption begins: "An Act to declare unfair or deceptive practices in the conduct of any trade or commerce to be unlawful..." The Act itself states at the outset, Sec. 1 (b): "The purpose of this Act shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped and this Act shall be liberally construed and applied to promote its underlying purposes and policies."

The Act defines " 'Trade' and 'commerce' " to "mean the advertising, distribution, sale, lease or offering for distribution, sale or lease, of any goods, services or any property, tangible or intangible, real, personal or mixed, or any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of the State." Sec. 2(c). The Act defines "Consumer transactions" as "the sale, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes" (Sec. 2(g)) and defines "Consumer acts and practices" to include "acts or practices intended to encourage consumer transactions." Sec. 2(h).

The Act then declares that "Unfair or deceptive acts or practices in the conduct of consumer transactions and

consumer acts or practices in trade or commerce are hereby declared unlawful." Sec. 3(a). As can be seen, the applicability of the Act is not limited solely to "consumer transactions." It applies also to acts or practices intended to encourage consumer transactions. Incorporating the pertinent definitions into the pertinent declaratory provision, the Act reads as follows: Unfair or deceptive acts or practices in the conduct of acts or practices intended to encourage consumer transactions in trade or commerce are hereby declared unlawful.

Several matters should be noted at this point. Although the word "any" in the phrase "any trade and commerce" was omitted by the legislature at one place (Sec. 3(a)), it was retained in several other places (Secs. 1(b) and 2(c)), including the definitions of "trade and commerce" so that wherever that phrase is used, the word "any" is included by definition. Ga. Senate Journal, 1975, pp. 1651, 1653.

The phrase "trade and commerce" even without the word "any" includes sellers other than retailers dealing with consumers. The provision of the Act here in issue does not use the word "retailers." Neither does it use the phrases relied upon by the Court of Appeals: "consumer commerce," "channels of consumer commerce," "consumer marketplace," "context of consumer marketplace." The name of the administrative agency, Office of *Consumer* Affairs, is not determinative of the scope of the Act.

The statute makes unlawful unfair or deceptive acts or practices intended to encourage consumer transactions in trade or commerce. The Court of Appeals found that rolling back odometers and selling the altered vehicles to retailers was a deceptive practice reasonably intended to encourage consumer transactions. 145 Ga. at 13. The Act itself states that its purpose is "to protect consumers and legitimate businesses from unfair or deceptive practices in the conduct of any trade or commerce. . ." and that the Act is to be liberally construed and applied to promote its purposes.

I would find that a middleman who by deceptive acts misrepresents his goods, thereby intending to encourage consumer transactions, may be found to have violated the

Act. As was said in A Guide to Georgia's Fair Business Practices Act of 1975, 10 Ga. B. J. 917, 923-924 (1976), "... the customer may also sue the manufacturer or distributor who violates the FBPA in packaging, advertising, or otherwise. . ."

In my view the Court of Appeals erred in affirming the grant of summary judgment to the defendants and in finding that, as a matter of law, defendants did not violate the FBPA by rolling back odometers on 78 vehicles to be sold to retailers for resale to consumers. I therefore dissent.

I am authorized to state that Justice Jordan and Justice Marshall join in this dissent.